# UNITED STATES v. GOLDENBERG.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 35. Argued and submitted October 14, 1897. — Decided October 25, 1897.

Where imported foreign goods are entered at a custom house for consumption, the payment by the importer of the full amount of duties ascertained to be due upon the liquidation of the entry of the merchandise, as well as the giving notice of dissatisfaction or protest, within ten days after the liquidation of such duties, is not necessary in order to enable a protesting importer to have the exaction and classification reviewed by a board of general appraisers and by the courts, under the provision in section 14 of the act of June 10, 1890, c. 407, 26 Stat. 131, 137, "That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage), shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges, and exactions other than duties, shall within ten days after, ' but not before,' such ascertainment and liquidation of duties, as well in cases of merchandise entered in bond as for consumption, or within ten days after the payment of such fees, charges and exactions, if dissatisfied with such decision, give notice in writing to the collector, setting forth therein distinctly and specifically, and in respect to each entry or pay-

ment, the reasons for his objections thereto, and if the merchandise is entered for consumption shall pay the full amount of the duties and charges ascertained to be due thereon."

The primary and general rule of statutory construction is that the intent of the law-maker is to be found in the language that he has used ; and the cases are few and exceptional in which the letter of the statute is not deemed controlling, and only arise when there are cogent reasons for believing that the letter does not fully justify and accurately disclose the intent.

THE 14th section of the act of Congress, approved June 10, 1890, c. 407, 26 Stat. 131, 137, is as follows :

"That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, including all dutiable costs and charges, and as to all fees and exactions of whatever character, (except duties on tonnage,) shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges, and exactions other than duties shall, within ten days after ' but not before ' such ascertainment and liquidation of duties, as well in cases of merchandise entered in bond as for consumption, or within ten days after the payment of such fees, charges, and exactions, if dissatisfied with such decision give notice in writing to the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto, and if the merchandise is entered for consumption shall pay the full amount of the duties and charges ascertained to be due thereon. Upon such notice and payment the collector shall transmit the invoice and all the papers and exhibits connected therewith to the board of three general appraisers, which shall be on duty at the port of New York, or to a board of three general appraisers who may be designated by the Secretary of the Treasury for such duty at that port, or at any other port, which board shall examine and decide the case thus submitted, and their decision, or that of a majority of them, shall be final and conclusive upon all persons interested therein, and the record shall be transmitted to the proper collector or person acting as such who shall liquidate the entry accord-

ingly, except in cases where an application shall be filed in the Circuit Court within the time and in the manner provided for in section fifteen of this act."

Upon this section, after stating the facts of this case showing its pertinency, the Circuit Court of Appeals of the Second Circuit has certified to us the following question:

"Was the payment of the full amount of the duties ascertained to be due upon the liquidation of the entry of the merchandise, required to be made by the importers, as well as the giving notice of dissatisfaction or protest, within ten days after the liquidation of such duties, where the goods, as in the present case, were entered for consumption, in order to enable the protesting importers to have the exaction and classification reviewed by the board of general appraisers and by the courts?"

*Mr. Attorney General,* for the United States, submitted upon the brief filed April 1, 1897, by *Mr. Edward B. Whitney, then Assistant Attorney General.*

Upon the present record the point appears very technical. The importer failed by but a single day to pay his dues within the time limited. Such accidents are rare and due to the importer's own carelessness or that of his agents. The question is an important one, however, because under the importers' construction of the statute they may and sometimes do indefinitely postpone a review of the collector's decision by simply refusing to pay the duties.

The practice was stated as follows by the Secretary of the Treasury to Attorney General Miller. "The practical result of this ruling is an accumulation in the custom houses of large numbers of protests, which may be made for speculative purposes, and which are not promptly transmitted to the Board of General Appraisers because of the failure of the importers to pay the increased duties against the exaction of which they file their protest. The importers are thus enabled to take the initiatory step in suits for recovery of duties, full payment of which has not been made, and delay indefinitely

the decision by the General Appraisers of the question raised
by the protest, with a view of taking advantage of decisions
which may hereafter be made in other cases, thereby defeat-
ing one of the chief purposes of the administrative act, which
was to secure the · prompt disposition of questions arising
under the tariff laws and discourage the filing of mere specu-
lative protests."

Attorney General Miller therefore states the question as
follows : " Whether the payment of duties thereby required
must, like the protest, be made within ten days after liquida-
tion, or, to state the question differently, whether Congress
intended to favor the importer, by permitting him not only to
have possession of his goods, but to keep the Government out
of its revenue at pleasure, or, certainly, until judgment could
be recovered against him in a plenary suit outside the statute
of June 10, 1890 ; for it is precisely this advantage that is
given the importer by the decision of the Board of General
Appraisers of November 26, 1890, as the obstructive practice
complained of shows."

A literal interpretation of the statute favors the importers.
This is due to the repetition of the word " shall " before the
words " pay the full amount of the duties." If this second
" shall," were omitted, the literal interpretation of the statute
would favor the Government contention.

The consequences of a literal interpretation of the statute
are so remarkable that even Judge Townsend, in sustaining
the importers' contention in the present case, does not adhere
to it. He in effect inserts after the ·second " shall " the
ambiguous words " within a reasonable time."

 The Government contends that the second " shall " was
inadvertently used and should be disregarded.

The general principles of construction applicable to this
case are familiar. Revenue laws, like other laws, " should be
so construed as to carry out the ·intention of the legislature
in passing them." *Cliquot's Champagne*, 3 Wall. 114, 145 ;
*United States* v. *Stowell*, 133 U. S. 1, 12. If, therefore, the
wording of a clause is such as clearly to indicate that it
requires correction in order to effectuate the intent of the

legislature, the correction will be made either by striking out a word which has inadvertently crept in, or substituting one word for another. *Union Ins. Co.* v. *United States*, 6 Wall. 759, 764. A recent instance of the rule that the intent governs the letter is to be found in *McKee* v. *United States*, 164 U. S. 287.

These cases are especially applicable when, as here, the sentence to be construed is long and involved, so that an error might easily creep in and remain unnoticed; and still more, when the sentence bears indubitable evidence of carelessness of construction. The quotation marks about the words "but not before" in this sentence show that it was never revised by a skilful hand. Such errors of style as the repetition of this word "shall" at the wrong place are common, and are much less likely to catch or offend the eye than these sporadic quotation marks.

Strictly speaking, Judge Townsend is correct in saying that this statute contains no ambiguity. As, however, it contains the strongest evidence of unskilful construction, the court is at liberty to correct a plain mistake if it is impossible to reconcile the literal interpretation of the statute with its clear intent.

The statute makes a distinction between merchandise entered in bond and merchandise entered for consumption. The former words are equivalent to merchandise entered for warehouse. Since 1846 imported merchandise (regularly entered) has been classified into merchandise entered for consumption and merchandise entered for warehouse. The provisionally estimated duties upon the former class of merchandise must be paid before the importer can get possession of his property. Duties upon the latter class are payable at any time within three years at the importer's option. The history of this system is set forth in *Barney* v. *Rickard*, 157 U. S. 352, and the system still exists.

The reason for omitting the requirement of payment in the case of merchandise entered for warehouse is clear. If the requirement were extended to that class of merchandise, it would prevent any settlement of the legal questions involved

until the importer was ready to withdraw his goods from warehouse; or it would require him to pay the duties while the goods were still in warehouse, and thus destroy the advantages of the warehouse system.

On the other hand, it is clear that the requirement is unnecessary as to the estimated duties which the importer must pay in order to get possession of goods which are entered for consumption.

The importance of the question is in relation to duties upon goods which have gone into the possession of the importer upon payment of the amount estimated by the collector at the time of the original entry, which estimate is thereafter found to have been too low. This class of importations contains a considerable proportion of those which are accompanied by fraud. The provisional estimate of duties is of course usually based upon the statements in the invoice. When the collector finds upon the final estimate or so called "liquidation" of the duties that his estimate was too low, the goods have passed into the importer's hands, and the Government's sole remedy is by suit. Instances of such suits are to be found in *United States* v. *Schlesinger*, 120 U. S. 109, and *Patton* v. *United States*, 159 U. S. 500.

What is the effect of a literal interpretation upon such entries?

The finality of the collector's decision is destroyed by filing the protest. Until decision by the Board of General Appraisers, it remains open to review. No decision from the Board of Appraisers can be obtained until the importer pays the full amount of the duties and charges. The importer thus has it in his power to postpone indefinitely or forever any decision of these questions under the Customs Administrative Act. Meanwhile the Government may sue him; but the questions of fact, being undecided by the proper tribunal, will have to be submitted to a jury. The dutiable valuation of the goods is, indeed, already settled under § 13 of the act (replacing § 2930 of the Revised Statutes), but many questions of fact may remain open, such as "the controlling use of the article in question; or its similitude to some other article; or

the values of its component materials; or its weight and fitness; or whether labor is necessary to fit it for use by the consumer; or its commercial designation." *Sonn* v. *Magone,* 159 U. S. 417, 422.

These questions of fact, together with the questions of law involved, must be submitted to the Board of Appraisers if the importer so elect, by paying the duties and charges. Otherwise they go to the court and jury. Is there any reason why the importer should be given such a right of election? Is it consonant with the intent and purpose of the Customs Administrative Act, as shown either by its well known history or by its internal evidence? Was it not the main purpose of the act to provide a special tribunal for the trial of all such questions of fact and law, and withdraw all questions of tariff interpretation from juries?

That this cannot be the true construction of the statute is recognized by Judge Townsend, who, therefore, instead of striking out the second "shall," inserts thereafter the words " within a reasonable time." But does this interfere any less with the letter of the statute than does the simple emendation which we suggest? Does it not rather import into it an altogether unworkable condition? Who is to decide whether the payment was made within a reasonable time? The collector, by transmitting or withholding the papers? Is he an officer who is likely to be charged by Congress with the decision of such a question as reasonableness of time? Yet his decision, if he shall see fit to withhold the papers, is final and conclusive. It cannot be controlled by a writ of mandamus outside of the District of Columbia. *McIntire* v. *Wood,* 7 Cranch, 504; *M'Clung* v. *Silliman,* 6 Wheat. 598. Nor even in the District of Columbia can the courts interfere, either by mandamus or by mandatory injunction, with the decision of an executive officer upon a question involving the exercise of discretion. *Decatur* v. *Paulding,* 14 Pet. 497; *Gaines* v. *Thompson,* 7 Wall. 347; *Litchfield* v. *Register and Receiver,* 9 Wall. 575; *Redfield* v. *Windom,* 137 U. S. 636; *International Contracting Co.* v. *Lamont,* 155 U. S. 303.

Yet, if reasonableness of time is the test, it must be the

collector who is to decide it. It cannot be intended that his ruling should be reviewed upon a jury trial afterwards.

The learned District Judge, in attempting to escape from the manifest impossibility of a literal interpretation of this statute, fell into another untenable position. It is impossible to believe that Congress intended to give the importer a choice of forum while denying that privilege to the United States. It is almost as hard to believe that Congress intended to make the right of review when the payment is not made within ten days dependent upon the permission of the collector, or even of his superior, the Secretary of the Treasury.

If, however, this court shall adopt Judge Townsend's theory, and thus in effect give the Secretary of the Treasury the right to impose a limit by general regulation upon the time within which the importer may obtain a review in such cases, the decision in the case at bar will avoid all evils.

*Mr. Edwin B. Smith* for appellees.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The question must be answered in the negative. Such answer is demanded by the obvious and natural import of the language, giving to it the ordinary grammatical construction. This is practically conceded by counsel for the Government, for he says in his brief "a literal interpretation of the statute favors the importers"; and again, referring to the opinion of District Judge Townsend, he adds, "strictly speaking, Judge Townsend is correct in saying that this statute contains no ambiguity." There are two separate clauses, each prescribing a condition. One is, "shall within ten days after 'but not before' . . . give notice," etc., and the other, "shall pay the full amount of the duties," etc. In the latter no time is mentioned, and, the clauses being independent, there is no grammatical warrant for taking the specification of time from the one and incorporating it in the other.

The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the lan-

guage that he has used. He is presumed to know the meaning of words and the rules of grammar. The courts have no function of legislation, and simply seek to ascertain the will of the legislator. It is true there are cases in which the letter of the statute is not deemed controlling, but the cases are few and exceptional, and only arise when there are cogent reasons for believing that the letter does not fully and accurately disclose the intent. No mere omission, no mere failure to provide for contingencies, which it may seem wise to have specifically provided for, justify any judicial addition to the language of the statute. In the case at bar the omission to make specific provision for the time of payment does not offend the moral sense; *Holy Trinity Church* v. *United States*, 143 U. S. 457; it involves no injustice, oppression or absurdity, *United States* v. *Kirby*, 7 Wall. 482; *McKee* v. *United States*, 164 U. S. 287; there is no overwhelming necessity for applying in the one clause the same limitation of time which is provided in the other. *Non constat* but that Congress believed it had sufficiently provided for payment by other legislation in reference to retaining possession until payment or security therefor; or that it failed to appreciate the advantages which counsel insists will inure to the importer in case payment does not equally with protest follow within ten days from the action of the collector; or that, appreciating fully those advantages, it was not unwilling that he should enjoy them. Certainly, there is nothing which imperatively requires the court to supply an omission in the statute, or to hold that Congress must have intended to do that which it has failed to do. Under these circumstances, all that can be determined is that Congress has not specifically provided that payment shall be made within ten days as one of the conditions of challenging the action of the collector, and hence there is no warrant for enforcing any such condition.

*An answer in the negative must be certified to the Circuit Court of Appeals.*