## In re SCHRAPE.

(District Court, W. D. Washington, N. D.   October 8, 1914.)

### No. 2447.

ALIENS (§ 65*)—NATURALIZATION—SERVICE IN NAVY OR OTHER MARINE SERVICE.

Act June 30, 1914, providing for the naturalization of aliens who have served or may serve in the Navy, Marine Corps, Revenue Cutter Service, or naval auxiliary service, and receive an honorable discharge or a discharge with recommendation for re-enlistment, that they may be admitted to citizenship without previous declaration of intention or proof of shore residence, and that their discharge shall be accepted as proof of good moral character, was enacted for the benefit of aliens in the branches of government service enumerated, who, not being citizens, were

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

not entitled to increased pay on re-enlistment, and applies only to those who are in the service when application is made, or are still eligible for re-enlistment with the benefits enjoyed by citizens.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 129; Dec. Dig. § 65.*]

In the matter of the petition of Paul William Schrape for naturalization. On objection to petition. Objection sustained, and petition dismissed.

John Speed Smith, Chief Examiner.

NETERER, District Judge. August 14, 1914, petition for naturalization was filed under the act of Congress approved June 30, 1914. The petition was brought before the court September 12, 1914, and on the hearing it was shown that the petitioner came to the United States as a seaman in 1909, deserted his ship at the port of New York, came to Seattle in an American schooner, enlisted in the revenue cutter service of the United States May 4, 1910, and completed four years in that service and was discharged therefrom on May 4, 1914, with recommendation for re-enlistment, and has not re-enlisted and does not intend to do so. The Chief Examiner objected to the petitioner's admission to citizenship under the provisions of the act of June 30, 1914.

The question for decision is: May the petitioner at once, without the usual notice, be admitted to citizenship upon his discharge, without submitting further evidence of moral character and shore residence? The act under which this petition was filed reads as follows:

"Any alien of the age of twenty-one years and upward who may, under existing law, become a citizen of the United States, who has served or may hereafter serve for one enlistment of not less than four years in the United States Navy or Marine Corps, and who has received therefrom an honorable discharge or an ordinary discharge with recommendation for re-enlistment, or who has completed four years in the Revenue Cutter Service and received therefrom an honorable discharge or an ordinary discharge with recommendation for re-enlistment, or who has completed four years of honorable service in the naval auxiliary service, shall be admitted to become a citizen of the United States upon his petition without any previous declaration of his intention to become such, and without proof of residence on shore, and the court admitting such alien shall, in addition to proof of good moral character, be satisfied by competent proof from naval or revenue cutter sources, of such service: Provided, that an honorable discharge from the Navy, Marine Corps, Revenue Cutter Service, or the naval auxiliary service, or an ordinary discharge with recommendation for re-enlistment, shall be accepted as proof of good moral character: Provided, further, that any court which now has or may hereafter be given jurisdiction to naturalize aliens as citizens of the United States may immediately naturalize any alien applying under and furnishing the proof prescribed by the foregoing provisions."

To correctly understand this act and the motive prompting its enactment, other provisions of the naturalization laws should be considered. Act July 26, 1894, c. 165, 28 Stat. page 124 (U. S. Comp. St. 1901, p. 1332), provides:

" * * * Any alien of the age of twenty-one years and upward who has enlisted or may enlist in the United States Navy or Marine Corps, and has served or may hereafter serve five consecutive years in the United States Navy or one enlistment in the United States Marine Corps, and has been or

may hereafter be honorably discharged, shall be admitted to become a citizen of the United States upon his petition, without any previous declaration of his intention to become such; and the court admitting such alien shall, in addition to proof of good moral character, be satisfied by competent proof of such person's service in and honorable discharge from the United States Navy or Marine Corps. * * *"

The term of enlistment in the Marine Corps at the time of the passage of this act was five years, but the Naval Appropriation Act of March 3, 1901 (31 Stat. 1132, c. 852 [U. S. Comp. St. 1901, p. 1095]), provides:

"That hereafter the enlistments into the Marine Corps shall be for a period of not less than four years."

Act June 29, 1906, c. 3592, 34 Stat. 596 (U. S. Comp. St. Supp. 1911, p. 528), established the Bureau of Immigration and Naturalization, and provided a uniform rule for the naturalization of aliens throughout the United States, but did not disturb the exemptions in favor of the special classes. The act of June, 1914, adds the Revenue Cutter Service and the naval auxiliary service, and the excepted classes already provided, and changes the term of enlistment in the Navy from five consecutive years to a term of not less than four years, and also supplements the requirement of an honorable discharge by extending it to include those receiving an ordinary discharge with *recommendation for re-enlistment*. No change is made in the act requiring proof of service and good moral character, but it does define what proof of good moral character may consist of, and that is:

"An honorable discharge from the Navy, Marine Corps, Revenue Cutter Service, or an ordinary discharge with recommendation for re-enlistment, shall be accepted as proof of good moral character, and that proof of residence upon the shore shall not be required"

—and further provides that the petitioner furnishing the prescribed proof may be immediately naturalized. It is contended by the Chief Examiner that the Congress intended to limit the provisions of this act to those in the service and to those who may re-enlist after a discharge within the period of four months.

The act of June 30, 1914, is not amendatory of a former act, and having no repealing clause, and repeals by implication not being favored, and nothing appearing upon the face of the act showing such intent, it must be held supplementary to the other acts, and the legislative statement in this act must be taken with the other statements to determine the congressional intent solemnly expressed. This act, standing alone, is free from ambiguity; but, when taken with the other acts, confusion arises as to the intent of the Congress with relation to the benefits to be conferred or evils to be remedied. The fundamental and general rule in construing statutes is to ascertain and give effect to the intention of the lawmaking body. 36 Cyc. 1106; Lewis' Sutherland Statutory Construction, vol. 2, page 701; U. S. v. Goldberg, 168 U. S. 95–102, 18 Sup. Ct. 3, 42 L. Ed. 394. The intent and purpose of the act may be determined by reference to the discussion of the subject by the lawmakers. Congressional Record, Second Session, vol. 51, pages 7956–7968. Mr. Stafford, at page 7965, said:

"There is at present on the statute book a law that gives a seaman in the Navy and the Marine Corps the privilege of taking out citizenship papers after they have served five years. This provision reduces that to four years. But it has been pointed out by the officers of the Navy Department that the seamen have difficulty in proving their moral character by two witnesses as is prescribed under the general law admitting aliens to citizenship, and so this bill provides for striking out the words 'after good moral character' as now provided by law."

On page 7966, Mr. Roberts, speaking on the bill, stated:

"The *real reason* for this change of law is to take care of certain cases now in the navy of aliens who, up to a certain period, *were being allowed increased pay* that came to them from re-enlistment. The naval authorities had treated their service in the navy as having made them citizens; but the Comptroller rendered a decision that seamen were not entitled to this increase of pay unless they were American citizens. Now the law stated that these men who were not citizens and who had been in the Navy and had been re-enlisted could not become citizens, because they could not get the year's residence ashore required in most jurisdictions, and because they could not furnish a certificate of good conduct. * * * Hence we propose to change the law as suggested by the Navy Department, *and take care of those men who, to all intents and purposes are citizens, and who have been getting the advantage of the increased pay on re-enlistment until the Comptroller decided it was unlawful,* and to make it so that these men will become citizens and give them the same advantage that a natural-born citizen has in re-enlistment the second or third or fourth time."

The expressed purpose of the lawmakers in support of this measure clearly establishes the intent to include only persons who were then in the service of the government defined by this act, or who could re-enlist and obtain the benefits enjoyed by enlisted citizens, and it was not the intention to include persons who were not in the government service, or whose time for re-enlistment, and to secure such benefits, had expired. All laws should receive a reasonable and sensible construction; general terms should be so limited as to have operation with and give vitality to other legislative acts not repealed or amended, with a view of administering justice, remedying the evils sought to be corrected, and not lead to absurd consequences. U. S. v. Kirby, 7 Wall. 482, 19 L. Ed. 278. The purpose of Congress in enacting the law of 1914 with reference to alien seamen, in my opinion, intended to extend the right to immediate naturalization and make a certificate of honorable discharge or discharge with recommendation for re-enlistment conclusive as to good moral character upon the court only in cases where aliens are in the government service specially provided for in this act, or are eligible for re-enlistment within the purview of the act.

Any other conclusion would permit aliens whose service with the government ended many years ago to be immediately naturalized, without notice, or proof of good moral character, or proof that they are not within the classes of persons excluded by other acts of Congress, such as anarchists, polygamists, etc., which beliefs and practices may have developed subsequent to discharge. The franchise of citizenship is the greatest honor that can be conferred upon an alien by this government. It gives him an equal voice at the ballot, and extends to him equal opportunities with the native-born citizen. Citizenship makes us constituent members of the United States government, attached to the principles of its Constitution, with due reverence for the Stars and

Stripes, the emblem of liberty and equality, and binds us everywhere to obey its laws, because it protects us everywhere. The right and duty are inseparable. They begin and end together. The Congress did not intend to jeopardize this right, this sacred privilege, by extending it to persons whose conduct has not been under special observation, such as the service provided in the act of 1914 affords, without competent proof of qualifications, and opportunity of investigating the conduct of the petitioner, as provided by the acts of 1894 and 1901, which require the publication of the petition and a hearing on a stated day, not less than 90 days after the filing of the petition. The Department of Labor having construed the act in harmony with this conclusion adds weight to the conclusions here expressed.

The objection will be sustained, and the petition dismissed.