In re **RINCON ISLAND LIMITED PARTNERSHIP, Debtor.**

**Christopher Ryan, as Litigation Trustee, and as Successor in Interest to the Official Committee of Unsecured Creditors of Rincon Island Limited Partnership, in the name and right of the estate of Rincon Island Limited Partnership and the estate of Windsor Energy U.S. Corporation, Plaintiff,**

v.

**Grayson Service, Inc., a California corporation, Defendant,**

and

**Rincon Island Limited Partnership, a Texas limited partnership, Nominal Defendant.**

**Bankruptcy No. ND 98–14791 RR. Adversary No. 99–1174 RR.**

United States Bankruptcy Court, C.D. California.

Oct. 10, 2000.

---

Ali M.M. Mojdehi, Baker & McKenzie, San Diego, CA, for plaintiff.

Leroy W. Wirz, Grand Junction, CO, for defendant.

David A. Zkunkewicz, Andrews & Kurth, L.L.P., Houston, Texas, for Rincon Island.

Franklyn S. Michaelson, Michaelson, Susi & Michaelson, Santa Barbara, CA, for Windsor Energy.

Brian Fittipaldi, Santa Barbara, CA, U.S. Trustee.

## MEMORANDUM OPINION

ROBIN L. RIBLET, Bankruptcy Judge.

The debtor, Rincon Island Limited Partnership (hereinafter "Rincon Island" or "debtor"), an oil and gas exploration and production business, owns and operates oil and gas wells and related offshore interests in the Rincon Island oil field in Ventura County, California. Windsor Energy U.S. Corporation (hereinafter "Windsor") is the general partner of Rincon Island. Windsor's principal asset is a 99.75% general partnership interest in Rincon Island. Rincon Island and Windsor collectively

commenced their chapter 11 bankruptcy cases on August 20, 1998, in the United States Bankruptcy for the District of Delaware. That Court administratively consolidated these cases and subsequently transferred them to the United States Bankruptcy Court for the Central District of California. This court later deconsolidated the cases.

The First Amended Joint Plan of Reorganization was confirmed by this Court on December 21, 1999. In relevant portion, the Plan established a Rincon Litigation Trust. Plaintiff herein is the Litigation Trustee and successor in interest to the Official Committee of Unsecured Creditors of Rincon Island.

Defendant Grayson Service, Inc. (hereinafter "Grayson") is a well servicing company which performs work on the debtor's oil wells. On October 23, 1998, 17 days after the commencement of the chapter 11 cases, Grayson recorded its Claim of Oil and Gas lien in the amount of $163,503 with the County of Ventura, California. There is no dispute that Grayson's lien was recorded within six months after Grayson's services were furnished, in compliance with the California Oil and Gas Lien Act. CAL.CODE OF CIV.PROC. §§ 1203.50 – 1203.66. After recordation of Grayson's lien, the County of Ventura, as mandated by CAL. GOV'T CODE § 27297.5, mailed a copy of the recorded lien to the debtor.

Thereafter, on April 21, 1999, approximately six and one-half months post-petition, Grayson filed an action in state court to enforce its lien. It is uncontroverted that Grayson's lien enforcement action was initiated within 180 days of recording its lien as required under CAL.CODE OF CIV. PROC. § 1203.61. However, neither the complaint nor the summons was served on the debtor within such statutory period. Grayson provided no written notice to the debtor or to the Court of its intention to enforce its lien prior to the expiration of

the period to commence an enforcement action. The instant adversary proceeding ensued seeking determination that Grayson's lien was invalid thereby rendering Grayson's claim unsecured.

In two separate motions for summary judgment previously brought by the Plaintiff, the Plaintiff argued that Grayson's lien was invalid because Grayson failed to provide timely written notice of its intent to enforce its lien pursuant to 11 U.S.C. § 546(b).[1] The presence of mixed issues of law and fact precluded granting summary judgment based on Grayson's contention that it provided oral notification to the debtor of Grayson's intent to enforce its lien.

■ Two issues were summarily resolved pretrial in favor of the plaintiff, however. Both issues were raised again by Grayson at the time of trial and warrant addressing here for the purposes of completing the record. The first issue was Grayson's contention that the County's mailing of a copy of the recorded lien to the debtor constituted notice under § 546(b). The court finds no merit in this assertion for several reasons.

■■ First, California law requires two distinct steps for the perfection of an oil and gas lien: recordation of the lien pursuant to CAL.CODE OF CIV.PROC. § 1203.58, and enforcement or perfection of the lien pursuant to CAL.CODE OF CIV.PROC. § 1203.61. Recordation must occur within six months after the date on which the claimant's labor was performed or services were provided. CAL.CODE OF CIV.PROC. § 1203.58. Thereafter, the recorded lien must be enforced or perfected by the filing of a lien enforcement action within 180 days from the time of the recording of the lien. CAL. CODE OF CIV.PROC. § 1203.61. *"Under California law, the filing of a foreclosure suit, an enforcement action, is required to maintain the perfection of a lien: if no suit is*

---

**1.** Unless otherwise indicated, all references to Chapters, Sections and Rules are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the FEDERAL RULES OF BANKRUPTCY PROCEDURE, Rules 1001–9036.

timely filed, the lien becomes void." *Village Nurseries v. Gould (In re Baldwin Builders)*, 232 B.R. 406, 411 (9th Cir. BAP 1999).

In bankruptcy cases if commencement of an action is required to maintain or continue perfection, § 546(b) unambiguously mandates that notice shall be given instead. *Id.* Section 546(b) specifically refers to the "perfection of such interest." The County's mailing of a copy of Grayson's recorded lien to the debtor pursuant to CAL. GOV'T CODE § 27297.5 was simply part of the recordation process and had no impact upon the perfection process, which in this instance was not attempted until 180 days later.

■ Additionally, an action complying with § 546(b) notice "must be calculated to notify the holder of the property, be it the debtor or the trustee, that the lienholder intends to enforce its lien." *Id.* at 414. While mailing a copy of Grayson's recorded lien to the debtor advised the debtor of the existence and recordation of the lien, such notice could not conceivably convey an intent to perfect or enforce that lien. Grayson can point to nothing contained in a copy of the recorded lien which indicates any intent to "perfect" or "enforce" Grayson's lien.

Lastly, § 546(b) notice must convey the lienholder's intent. *Id.* The lienholder here, Grayson, did not mail the copy, and there is no evidence that Grayson enlisted the County to advise the debtor of Grayson's intentions. Nor is the *County Grayson's* agent.

Grayson provided no new evidence or authority on this issue at trial. The Court therefore concludes that the County's mailing of a copy of Grayson's recorded lien to the debtor did not constitute notice under § 546(b).

■ The second issue which this court previously resolved in favor of the Plaintiff related to Grayson's contention that the filing of Grayson's state court lien enforcement action on April 21, 1999, constituted § 546(b) notice. As explained in *Baldwin Builders*, post-petition lien foreclosure actions are enforcement actions prohibited by the automatic stay. *Baldwin Builders*, 232 B.R. at 410–11, *citing In re Hunters Run Ltd. Partnership*, 875 F.2d 1425, 1427–29 (9th Cir.1989). Actions violating the automatic stay are void. *Baldwin Builders*, 232 B.R. at 410, *citing Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992). *See also Roofing Concepts, Inc. v. Kenyon Industries, Inc. (In re Coated Sales)*, 147 B.R. 842, 845 (S.D.N.Y.1992). The filing of Grayson's state court lien enforcement action was void.

■ Had Grayson served the complaint on the debtor within the statutory period for perfection of its lien, the complaint may have constituted an informal proof of claim (*Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Restaurants, Inc.)*, 754 F.2d 811, 816–17 (9th Cir.1985)), which may have constituted § 546(b) notice. However, in this instance Mr. Grayson testified he handed Mr. Klarc a copy of the complaint sometime after April 21, 1999. (Transcript of Proceedings, May 11, 2000, at 24:21 – 25:8). Because § 546(b) specifically requires that notice be given "within the time fixed by such law for such seizure or such commencement," providing the debtor with a copy of the state court complaint after expiration of the statutory period could not constitute notice under § 546(b).

■ As to Grayson's contention that it provided oral notification under § 546(b), trial was held on May 11, 2000, for the purpose of determining whether Grayson orally informed the debtor that Grayson intended to enforce its lien, and if so, whether such oral notice was sufficient to constitute "notice" pursuant to § 546(b), thereby perfecting Grayson's lien.

Section 546(b) provides:

(1) The rights and powers of a trustee under section 544, 545, and 549 of this

title are subject to any generally applicable law that—

(A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or

(B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.

(2) If—

(A) a law described in paragraph (1) requires seizure of such property or commencement of an action to accomplish such perfection, or maintenance or continuation of perfection. of an interest in property; and

(B) such property has not been seized or such an action has not been commenced before the date of the filing of the petition;

*such interest in such property shall be perfected, or perfection of such interest shall be maintained or continued, by giving notice within the time fixed by such law for such seizure or such commencement.*

11 U.S.C. § 546(b) (emphasis added).

As stated by the Bankruptcy Appellate Panel of the Ninth Circuit in *Baldwin Builders,* relative to § 546(b) notice:

The Code does not specify what the notice must contain or to whom it should be given, nor that the notice must be filed in the bankruptcy court.

There are no Ninth Circuit cases dealing with the sufficiency of notice under § 546(b). In the Seventh Circuit, "notice is sufficient if it informs the court or the possessor of the property that the creditor intends to enforce his lien...."

*Baldwin Builders,* 232 B.R. at 413, *citing Jones v. Salem National Bank (Matter of Fullop),* 6 F.3d 422, 430 (7th Cir.1993).

The statutory predecessor to § 546(b) under the Bankruptcy Act contained an express requirement that *perfection be* accomplished by "filing notice thereof with the court." [2] In Plaintiff's view, principles of statutory construction mandate that if the prior version of § 546(b) contained the requirement that notice must be filed with the court, then there is an inference that Congress intended that practice to continue, absent express indications to the contrary in the legislative history. The only authority cited by Plaintiff for this proposition is *Committee of Unsecured Creditors v. Commodity Credit Corp. (In re KF Dairies, Inc.),* 143 B.R. 734, 736 (9th Cir. BAP 1992). In discussing whether a decision under the Bankruptcy Act was applicable to the Code, the Panel in *KF Dairies,* stated, "No changes of law or policy are to be interpreted from changes of language in revision of a statute unless the intent to make a change is clearly expressed." *KF Dairies,* 143 B.R. at 736, *citing Ehring v. Western Community Moneycenter (In re Ehring),* 91 B.R. 897, 900 (9th Cir. BAP 1988), *aff'd,* 900 F.2d 184 (9th Cir.1990). The source of this quote, the *Ehring* decision, more completely expressed the principle and the exception thereto as follows:

No changes of law or policy are to be interpreted from changes of language in revision of a statute unless the intent to *make a change is clearly expressed.* [citations omitted] Only where the plain language of the amendment works a clear change in former law should new

**2.** Section 67c(1)(B) of the Bankruptcy Act of 1898 (ch. 541, 30 Stat. 544 (1898), codified as amended at 11 U.S.C. § 107 (1976)) provided, in pertinent part:

That if applicable lien law requires a lien valid against the trustee under section 70, subdivision c, to be perfected by the seizure of property, it shall instead be perfected as permitted by this subdivision c of section 67 by *filing notice thereof with the court.*

*Reprinted in* LAWRENCE P. KING, COLLIER ON BANKRUPTCY, App. A, Pt. 3(a), 3–1, at 3–64–66 (15th ed. rev.2000) (emphasis added).

interpretations be given effect. [citation omitted]

*Ehring,* 91 B.R. at 900.

■ The plain language exception recognized by the Panel in Ehring was validated by the United States Supreme Court's decision in *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), holding that the resolution of a dispute over the meaning of a statute begins with the language of the statute itself. "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Id.,* 489 U.S. at 242, 109 S.Ct. at 1031, *citing Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). Subsequent to its decision in *Ron Pair Enterprises,* the U.S. Supreme Court again clarified a court's task of statutory interpretation as follows:

> In any event, canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. *See,* e.g., *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241–242, 109 S.Ct. 1026, 1030–1031, 103 L.Ed.2d 290 (1989); *United States v. Goldenberg,* 168 U.S. 95, 102–103, 18 S.Ct. 3, 4, 42 L.Ed. 394 (1897), *Oneale v. Thornton,* 6 Cranch 53, 68, 3 L.Ed. 150 (1810). When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete." *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981); *see also Ron Pair Enterprises, supra,* 489 U.S., at 241, 109 S.Ct., at 1030.

*Connecticut National Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992).

■ The directive of the U.S. Supreme Court relative to statutory interpretation was accurately stated and applied by the Ninth Circuit Bankruptcy Appellate Panel in *Baldwin Builders:*

> [W]e are to follow statutes as they are written. *In re Berg,* 188 B.R. 615, 621 (9th Cir. BAP 1995), *aff'd,* 121 F.3d 535 (9th Cir.1997). "Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Robinson v. Shell Oil Co.,* 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).

*Baldwin Builders,* 232 B.R. at 411.

Applying these guidelines, both the current and predecessor statutes will be examined. Whereas the predecessor statute specified a method of perfection "by filing notice thereof with the court," the current language of § 546(b) specifies a method of perfection "by giving notice". In enacting the Code, Congress deleted entirely the language "by filing notice thereof with the court," and replaced it with the language, "by giving notice." The change not only eliminated the requirement that notice be filed *with the court,* but by changing the language from "filing" to "giving," the formality inherent in "filing" has also been eliminated.

BLACK'S LAW DICTIONARY defines "notice" as:

> 1. Legal notification required by law or agreement, or imparted by operation of law as a result of some fact (such as the recording of an instrument); definite legal cognizance, actual or constructive, of an existing right or title.... A person has notice of a fact or condition if that person (1) has actual knowledge of it; (2) has received a notice of it; (3) has reason to know about it; (4) knows about a related fact; or (5) is considered

as having been able to ascertain it by checking an official filing or recording. 2. The condition of being so notified, whether or not actual awareness exists.... 3. A written or printed announcement.... Cf. KNOWLEDGE.

BLACK'S LAW DICTIONARY 1087 (7th ed.1999).

"Actual notice" is defined as "[n]otice given directly to, or received personally by, a party." "Direct notice" is "[a]ctual notice of a fact that is brought directly to a party's attention." "Due notice" is "[s]ufficient and proper notice that is intended to and likely to reach a particular person or the public; notice that is legally adequate given the particular circumstances." And "personal notice" is defined as "[o]ral or written notice, according to the circumstances, given directly to the affected person." *Id.*, at 1087–88.

"Notice" has also been defined as "actual knowledge of such facts as would put a prudent person on inquiry as to the existence of the claim." *United States v. Vibradamp Corp.*, 257 F.Supp. 931, 935 (S.D.Cal.1966).

In the bankruptcy context, any notice, whether oral or written, is sufficient to subject a creditor to the automatic stay. *In re Lile*, 103 B.R. 830, 836 (Bankr. S.D.Tex.1989), *aff'd* 161 B.R. 788 (S.D.Tex. 1993), *aff'd in part* 43 F.3d 668 (5th Cir. 1994), *citing Stucka v. United States (In re Stucka)*, 77 B.R. 777, 781 (Bankr. C.D.Cal.1987). For purposes of the enforcement of a bar date for filing a nondischargeability complaint, oral notice is sufficient when a creditor has actual knowledge of a bankruptcy filing in time to file a complaint under § 523. *Kelly v. Gordon (In re Gordon)*, 988 F.2d 1000 (9th Cir. 1993); *Walker v. Wilde (In re Walker)*, 927 F.2d 1138 (10th Cir.1991).

Using the ordinary definition of "notice," the plain meaning of "giving notice" is to inform or to provide information. A plain reading of § 546(b), which section does not include the term "written," is therefore, that an unperfected lien is to be perfected

by timely informing the debtor or trustee of its existence. Nothing more need be read into the unambiguous words "giving notice."

While my inquiry could end with this finding of unambiguous statutory language, the legislative history of 546(b) demonstrates that Congress used the terms "giving notice" purposely, and in so doing, specifically intended to eliminate any requirement of a writing or filing with the court. In the REPORT OF THE COMMISSION ON BANKRUPTCY LAWS OF THE UNITED STATES of July 30, 1973, the Commission recommended "a substantial departure" from the Act "with respect to the treatment of statutory and common-law liens."

> To the extent statutory and common-law liens are enforceable, they are not subject to attack under the preference provisions of the proposed Act. However, if not perfected of public record under applicable law as to the specific property involved, an otherwise enforceable lien becomes unenforceable if *notice of the lien is not given to the trustee....*

REPORT OF THE COMMISSION ON BANKRUPTCY LAWS OF THE UNITED STATES, H.R.Doc. No. 93–137, part 1, 93rd Cong., 1st Sess. (1973), *reprinted in* LAWRENCE P. KING, COLLIER ON BANKRUPTCY, App. B, Pt. 4(c), 4–221, at 4–475–76 (15th ed. rev.2000) (emphasis added).

Both the Senate and House Reports similarly stated, "If applicable law requires seizure for perfection, then perfection is by *notice to the trustee instead.*" S.Rep. No. 95–989, 95th Cong., 2d Sess. (1978), *reprinted in* COLLIER, *supra*, at App. D, Pt. 4(e)(1), 4–1927, at 4–2034; H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977), *reprinted in* COLLIER, *supra*, at App. C, Pt. 4(d)(1), 4–1047, at 4–1510 (emphasis added).

My conclusion that no writing is required under § 546(b) is *consistent with the conclusions drawn by the Ninth Circuit* Bankruptcy Appellate Panel in *Baldwin Builders.* "The cases suggest that, at a minimum, the action must be calculated

to notify the holder of the property, be it the debtor or the trustee, that the lienholder intends to enforce its lien." *Baldwin Builders,* 232 B.R. at 414. Indeed, the Panel in *Baldwin Builders* considered whether discussions of lien enforcement at meetings between the creditor and the debtor's principals constituted notice under § 546(b). The Panel found no clear error with the Bankruptcy Court's conclusion that whatever notice the principals got was in their capacities as limited partners of the creditor. *Id.,* at 414. Moreover, the discussions related to the creditor's decision to hire a law firm to pursue the liens, and thus were at most preliminary steps, not affirmative actions calculated to inform the debtor that the creditor intended to enforce its lien rights. Thus, the Panel implicitly acknowledged that a conversation could constitute § 546(b) notice if it were "an affirmative action calculated to inform the debtor" of the creditor's intent to enforce its lien rights. *Id.*

The Panel's decision in *Baldwin Builders* favorably cited *Fullop,* 6 F.3d 422 (7th Cir.1993), which involved a bank's lien on working interests in oil and gas leases. In *Fullop,* proceeds from oil production were paid directly to the bank. The bank applied the funds received to the notes and remitted the balance to the debtor. Post-petition, the bank stopped remitting the balance to the debtor and began, instead, to pay the operating expenses, and applied the balance to the outstanding notes. The Seventh Circuit found that "no formal proceeding was required for the Bank to provide notice that it intended to enforce the lien in the post-petition profits of the working interests." By ceasing to remit the excess proceeds to the debtor and paying the operation expenses, the Seventh Circuit concluded that the bank "notified Fullop and the bankruptcy court that the Bank was taking affirmative action to enforce its lien," thereby perfecting its interest in the post-petition profits. *Id.,* 6 F.3d at 430–31.

Based on the conclusions drawn in *Fullop* and *Baldwin Builders,* and the plain reading of § 546(b), this court finds that perfection under § 546(b) can be accomplished by oral notice, if such notice or conduct is an affirmative action calculated to inform the debtor or the trustee of the creditor's intent to enforce its lien rights. While this court is mindful that this conclusion may invite a storm of "he said/she said" litigation, the anticipation of future litigation must not prevent the court from reading the law the way it is written.

Having concluded that § 546(b) does not require written notice, the court must next address whether Grayson's actions in this case constitute sufficient notice to the debtor. Two written declarations were submitted by the debtor's manager, Ronald Klarc. In his first declaration of September 15, 1999, which was originally submitted in support of the Plaintiff's first motion for summary judgment, Mr. Klarc stated that he did not receive any correspondence or written notice from Grayson relative to its lien and that the debtor had never been served with any lawsuit or complaint relative to enforcement of Grayson's lien. (Declaration of Ronald A. Klarc in Support of Motion of Official Committee of Unsecured Creditors for Summary Judgment (hereinafter "Klarc Decl. No. 1"), at 2:8–11). Mr. Klarc's declaration further stated that the only notice he received as to Grayson's lien was the notice of the recorded lien sent by the County Recorder. (Klarc Decl. No. 1, at 2:16–18).

In a second declaration, dated November 1, 1999, Mr. Klarc stated:

At some point in 1998 or 1999 I spoke with Mr. Bob Grayson and Mr. Ray Cano in my office. Mr. Grayson informed me that he intended to pursue his claim in the Rincon bankruptcy case, and he would do what was necessary to get paid.

Declaration of Ronald A. Klarc (hereinafter "Klarc Dec. No. 2"), at ¶ 3.

At trial, Mr. Klarc testified that both declarations were accurate, and that while

he could recall at least two meetings with Mr. Grayson, he could not recall the dates on which those meetings occurred. (Transcript at 11:6–9). When asked for his recollection of the discussions, Mr. Klarc testified:

My recollection is Mr. Grayson and Mr. Cano were [sic] in my office and we were discussing the amounts of money owed to the Grayson Company and that he was going to take legal action to protect his interest. And I recall telling him, go ahead and do whatever is necessary, get your lawyer, we all have lawyers here.

Transcript at 14:7–12.

Mr. Klarc testified that he understood this to mean that Grayson would pursue legal action. (Transcript at 14:24–25).

Mr. Grayson, Vice President and General Manager of Grayson, testified that the date of his conversation with Mr. Klarc was April 21, 1999. (Declaration of Bob Grayson at ¶ 2). His recollection of the date was precise: Mr. Grayson distinctly remembered the conversation was on the same day that Grayson filed its state court lawsuit. (Transcript at 22:2 – 23.18). On that date, "I told Mr. Klarc that I would file suit, or take whatever other legal action was necessary to enforce the lien in order that Grayson get paid."(Grayson Decl. At ¶ 5). Mr. Grayson's testimony was consistent and uncontroverted.

Mr. Grayson's statement was clearly an affirmative action and was made to the debtor. The statement was made in a telephone conversation initiated by Mr. Grayson. (Transcript at 22:6–8). Mr. Grayson spoke directly to Mr. Klarc, the debtor's manager. (Transcript at 22:2–21). Mr. Grayson was well aware of the statutory deadline for filing his lien enforcement action, and he was familiar with § 546, as well as California laws relative to lien enforcement. (Transcript at 28:12 – 29:7). Mr. Grayson testified, "I called [Mr. Klarc] to inform him that I was filing the lawsuit and taking the necessary legal action to protect my debt." (Transcript at 28:8–10).

Was Mr. Grayson's statement calculated to inform the debtor of Grayson's intent to enforce its lien rights? Mr. Grayson stated, "I told Mr. Klarc that I would file suit, or take whatever other legal action was necessary to enforce the lien in order that Grayson get paid." (Grayson Declaration at ¶ 5; Transcript at 27:20 – 28:1). Mr. Grayson also testified that at the time of the phone call to Mr. Klarc he was simultaneously in the process of having the lawsuit filed. (Transcript at 23:6:18). The statement made to Mr. Klarc expressed an intent to take immediate, albeit, future action. That Grayson's intent was expressed in the future tense is of little significance. Notice pursuant to § 546(b) "is sufficient if it informs the court or the possessor of the property that the creditor *intends to* enforce his lien ..." *Baldwin Builders*, 232 B.R. at 413, citing *Fullop*, 6 F.3d at 430 (emphasis added).

It is difficult to imagine a clearer expression of intent to enforce a lien than that made by Mr. Grayson. "I told Mr. Klarc that I would file suit, or take whatever other legal action was necessary to enforce the lien in order that Grayson get paid." Mr. Grayson's written declaration was consistent with his oral testimony at trial. No less than three times during his examination he stated these were his exact words. (Transcript at 27:20 28:1). While Mr. Klarc recalled the conversation as occurring in person rather than by telephone, Mr. Klarc's recollection of Mr. Grayson's statement was consistent with Mr. Grayson's recollection.

Unlike the facts in *Baldwin Builders*, where the discussions relative to hiring legal counsel to pursue liens were at most preliminary steps, in this instance, Mr. Grayson was aware of the statutory deadline, he had legal counsel who had prepared the lien enforcement complaint, and he placed a telephone call to Mr. Klarc for the purpose of informing Mr. Klarc that Grayson was filing the lawsuit and taking

necessary legal action to enforce Grayson's lien.

Based on the evidence at trial, I find that Mr. Grayson's affirmative statements were calculated to inform the debtor of Grayson's intent to enforce its lien rights, and that such statements constitute the criteria for giving § 546(b) notice as set forth in *Baldwin Builders*.

The 180-day statutory period within which Grayson could perfect its lien, which is the same period within which Grayson could give § 546(b) notice, expired on April 21, 1999. Grayson's oral notification to the debtor's agent here, Mr. Klarc, of Grayson's intent to enforce its lien was made on April 21, 1999, and is therefore timely. Grayson's oral notification constituted notice under § 546(b), thereby perfecting Grayson's lien.

Having duly perfected its oil and gas lien, Grayson is allowed a secured claim against the estate. Judgment shall be entered in favor of the Defendant Grayson Service, Inc.