In re Anthony E. RAMOS, Applicant.

No. 04–BG–126.

District of Columbia Court of Appeals.

Argued Oct. 14, 2004.

Decided Nov. 4, 2004.

Anthony E. Ramos pro se.

Alan H. Kent for the District of Columbia Committee on Admissions.

Before SCHWELB and GLICKMAN, Associate Judges, and NEWMAN, Senior Judge.

SCHWELB, Associate Judge:

On January 30, 2004, this court's Committee on Admissions ("COA") recommended, without holding a hearing, that the application of Anthony E. Ramos for admission to our Bar be denied, because Ramos is currently disbarred in Florida, the jurisdiction of his original bar admission. We conclude that Ramos was entitled to a hearing pursuant to D.C.App. R. 46(f)(1), and we remand the case to the COA with directions to hold such a hearing.

## I.

### BACKGROUND

On April 2, 1981, Ramos was admitted to the Florida Bar. This was his first and only bar admission. Ramos thereafter maintained a private law practice in Florida.

On December 18, 1997, the Supreme Court of Florida issued an order disbarring Ramos in that jurisdiction. The order stated, in pertinent part, as follows:

[Ramos] is disbarred effective immediately. No application for readmission to the Florida Bar will be permitted for a period of twenty (20) years. [Ramos] is also ordered to make restitution as stated in the referee's report.

*The Florida Bar v. Ramos,* 703 So.2d 478 (Fla.1997) (per curiam).

Ramos subsequently applied for admission to the District of Columbia Bar. He failed the District of Columbia Bar examination in February 2001, but passed it in July 2002. In his application for admission, Ramos disclosed the following facts:

With respect to question 10 [re ever disqualified from practicing law]: As a result of employee embezzlement of trust funds, I have been disbarred from the practice of law in the Federal and State Courts for the State of Florida, as of November 1997.

With respect to question 13 [re complaints alleging fraud, deceit, etc.]: Yes, part of the disciplinary proceedings involved allegations of forgery. In addition, there is ongoing litigation on issues surrounding the trust account.

With respect to question 22 [re violations of law]: Yes, I was tried on two counts of grand theft, resulting from the trust account issues. The jury was deadlocked, and my motion for mistrial was granted. The case was settled the next day with a plea in my best interest to two counts of petit theft, a misdemeanor, withhold adjudication, full rights of expungement, one year probation, no factual basis on the plea, five hours per month of community service.

As a result of these disclosures, and after reviewing additional information and materials submitted by Ramos, the COA notified Ramos on March 12, 2003, that it declined to certify him for admission at that time. Five days later, Ramos requested a formal hearing pursuant to Rule 46(f)(1). In conformity with Rule 46(f)(2)(ii), the COA apprised Ramos of its reasons for declining to certify him for admission:

The Committee has considered the following: (1) your disbarment from the practice of law in the State of Florida on December 18, 1997, for embezzlement of trust funds; and (2) lack of evidence in the file showing satisfaction of the judgment against you entered by the Supreme Court of Florida on December 18, 1997, for costs in the amount of $34,590.76.

Until July 2003, the COA had intended to provide Ramos with a Rule 46(f)(1) hearing at which he could challenge the COA's refusal to certify him. On July 24, 2003, however, this court issued its opinion in *In re Mbakpuo*, 829 A.2d 217 (D.C.2003) (per curiam). In *Mbakpuo*, a case in which the petitioner had been disbarred in Ohio, the court stated, *inter alia*, that "we cannot grant petitioner's District of Columbia bar application until he has successfully regained his license to practice in Ohio." *Id.* at 220. The COA construed *Mbakpuo* as standing for a universal "bright line" rule that where an applicant has been disbarred in the jurisdiction of his original admission to practice, and where he has not regained his license to practice law in that jurisdiction, he is automatically ineligible for admission to our Bar. Accordingly, the COA advised Ramos that he would not be considered for admission in the District until he could establish that he had been readmitted in Florida. Ramos then filed a timely petition for review.

## II.

### LEGAL ANALYSIS

Our Rule 46(f)(1) provides as follows:

(f) *Hearing by the Committee.* (1) In determining the moral character and general fitness of an applicant for admission to the Bar, the Committee [on Admissions] may act without requiring the applicant to appear before it to be sworn and interrogated. If the Committee is unwilling to certify an applicant, it shall

notify the applicant of the choice of withdrawing the application or requesting a hearing. Notice shall be given by certified mail at the address appearing on the application. Within 30 days from the date of the notice, the applicant may file with the Committee a written request for a hearing. If the applicant fails to file a timely request for a hearing, the applicant's application shall be deemed withdrawn. *If the applicant requests a hearing within the 30–day period, the request shall be granted* and the hearing shall be conducted by the Committee under the following rules of procedure.

(Emphasis added.) On its face, the plain and unambiguous language of Rule 46(f)(1) requires the COA to conduct a hearing in any case in which an applicant who has been refused certification requests one. Although, according to the COA, "the surest way to misread a document is to read it literally," and although, as Judge Learned Hand has cautioned, we should not "make a fortress out of the dictionary," *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.), *aff'd*, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945) (quoted in *James Parreco & Son v. District of Columbia Rental Hous. Comm'n*, 567 A.2d 43, 46 (D.C.1989)), "[t]he primary and general rule of statutory construction[1] is that the intent of the lawmaker is to be found in the language that he has used." *Varela v. Hi–Lo Powered Stirrups, Inc.*, 424 A.2d 61, 64 (D.C. 1980) (en banc) (quoting *United States v. Goldenberg*, 168 U.S. 95, 102–03, 18 S.Ct. 3, 42 L.Ed. 394 (1897)); *see also Parreco*, 567 A.2d at 46. In the absence of some persuasive showing by the COA to the contrary, Ramos was entitled, by the language of Rule 46(f)(1), to a hearing before the COA.

The COA argues that in this case a hearing was not required because Ramos did not satisfy the "threshold" requirements for admission to our Bar. This is so, according to the COA, because Ramos' 1997 disbarment in Florida, which continues to render him ineligible to practice in that state, precluded his admission to our Bar, so that the holding of a hearing before the COA would be a futile act.[2] The COA bases this claim of futility on what it describes as the "bright line" rule established by our decision in *Mbakpuo*. In our view, however, *Mbakpuo* is distinguishable in critical respects from the present case, for that decision did not establish a "bright line" doctrine applicable to facts such as those now before us, which are quite different from the facts in *Mbakpuo*.

In *Mbakpuo*, the court's decision not to admit the petitioner to our Bar was

> guided by the fact that petitioner has been disbarred in the State of Ohio. If we were to admit him now to the District of Columbia Bar, petitioner would be immediately subject to reciprocal disciplinary action in the District of Columbia as a result of his disbarment in a sister jurisdiction.

829 A.2d at 220 (citations omitted). The court explained that this was so because the petitioner's misconduct had already been adjudicated in Ohio:

1. Or, in this case, the construction of a rule of court.

2. In its response to Ramos' petition, the COA cites the Latin maxim *"Lex non praecipit inutilia, quia inutilis labor stultus."* ("The law commands not useless things, because useless labor is foolish.") We have also recognized, in certain circumstances, that "the law does not require the doing of a futile act...." *Stack v. United States*, 519 A.2d 147, 156 (D.C.1986) (citation omitted); *see also In re Melton*, 597 A.2d 892, 908 (D.C.1991) (en banc).

With exceptions not pertinent here, "a final determination by a disciplining court outside the District of Columbia or by another court in the District of Columbia that an attorney has been guilty of professional misconduct shall conclusively establish the misconduct for the purpose of a reciprocal disciplinary proceeding in this court." D.C. Bar Rule XI, § 11(c).

*Id.* The court thus found the situation analogous to one that would be presented in a reciprocal discipline case. The decision in *Mbakpuo* therefore turns on the court's determination that if the applicant in *Mbakpuo* had been a member of the District Bar, he would immediately have been subject to reciprocal discipline based on his disbarment in Ohio. The court was evidently of the opinion that none of the grounds upon which we might deviate from our policy of imposing reciprocal discipline, *see* D.C.Bar. R. XI, § 11(c),[3] existed in the *Mbakpuo* case.

But if, as *Mbakpuo* holds, the position of an applicant for admission who has been disbarred in another jurisdiction is analogous to that of a District of Columbia attorney disbarred elsewhere, who is subject to reciprocal discipline, then the applicant must have the right automatically enjoyed by a respondent in a reciprocal disciplinary proceeding, *i.e.*, to show that one of the exceptions to our "reciprocal

discipline" policy applies to him. Moreover, although there is a presumption in reciprocal discipline cases that the sanction in the District of Columbia will be the same as that which was imposed in the original disciplining jurisdiction, that presumption is a rebuttable one, *In re Gardner,* 650 A.2d 693, 695 (D.C.1994), and the attorney (or, in this case, by analogy, the applicant) is therefore entitled to an opportunity to show why he should be treated less severely than in Florida. *Cf. In re Daum,* 635 A.2d 933, 934 (D.C.1994) (attorney suspended for one year in Maryland received a reprimand in the District of Columbia).

In his petition for review, and in his subsequent submissions to the court, Ramos has proffered a number of reasons why the sanction imposed by the Supreme Court of Florida—disbarment for a period of at least twenty years—does not warrant denial of his application in the District, but we shall confine our discussion to only one of his claims.[4] Ramos was disbarred in Florida in 1997. He will not be permitted to apply for reinstatement to the Florida Bar until 2017. In the District of Columbia, on the other hand, a disbarred attorney may apply for reinstatement five years after his disbarment. *In re McBride,* 602 A.2d 626, 641 (D.C.1992) (en banc). Ramos' twenty-year disbarment in Florida

---

3. D.C. Bar R. XI, § 11(c), reads in pertinent part as follows:

   Standards for reciprocal discipline. Reciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence, that:
   (1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
   (2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, ac-

   cept as final the conclusion on that subject; or
   (3) The imposition of the same discipline by the Court would result in grave injustice; or
   (4) The misconduct established warrants substantially different discipline in the District of Columbia; or
   (5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

4. On remand, the COA should, of course, consider all of Ramos' contentions in support of his application for admission.

therefore at least arguably constitutes substantially different discipline from that which would have been imposed in the District. *See* D.C. Bar R. XI, § 11(c)(4), quoted in note 3, *supra.*

We emphasize that if Ramos had been a member of our Bar, and if he had been disbarred in the District in 1997, he would now be eligible to apply for reinstatement here, notwithstanding his far longer Florida disbarment. We perceive no basis in reason or authority for concluding that Ramos is ineligible to apply for admission when he has *not* been disbarred in this jurisdiction;[5] a person who has not been disbarred here should not receive less favorable treatment than that which would be accorded to a disbarred District of Columbia lawyer. Accordingly, we conclude that Ramos is entitled to a hearing before the COA at which he may attempt to show, by clear and convincing evidence, that notwithstanding the duration of his Florida disbarment, he should be admitted to membership in the District of Columbia Bar, especially when nearly seven years have elapsed since his Florida disbarment. Ramos' position is not manifestly insubstantial or frivolous, and we therefore cannot agree with the COA's position that the language of Rule 46(f)(1) may be disregarded on the ground that a hearing would be futile.

Our decision in *Mbakpuo* is not to the contrary. The applicant in that case was disbarred in Ohio in 2002.[6] If he had been a member of our Bar, and if reciprocal discipline had been imposed against him, much of the five-year period of a District of Columbia disbarment would not yet have run at the time of the court's ruling. Moreover, the court in *Mbakpuo* was evidently satisfied that none of the exceptions to reciprocal discipline was applicable, and that identical reciprocal discipline, *i.e.*, disbarment, was therefore appropriate. The court did not address, or purport to address, a situation such as the one in the present case, in which the applicant contends that one or more of the exceptions in D.C. Bar R. XI, § 11(c), are applicable, and in which the discipline imposed in the originating jurisdiction may have been substantially more severe than the sanction which this court would impose if the misconduct had occurred in the District. To the extent that any language in the court's opinion in *Mbakpuo* might be viewed as broader than our construction of it here, we note the Supreme Court's apt admonition in *Armour & Co. v. Wantock*, 323 U.S. 126, 132–33, 65 S.Ct. 165, 89 L.Ed. 118 (1944):

> It is timely again to remind counsel that words of our opinions are to be read in the light of the facts of the case under discussion. *To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court.* General expressions transposed to other facts are often misleading.

(Emphasis added); *see also Khiem v. United States*, 612 A.2d 160, 164 (D.C.

---

5. Even when disbarment in this jurisdiction is ordered as reciprocal discipline after an attorney's disbarment elsewhere has expired, the court may, in order to avoid injustice, order that disbarment here shall be *nunc pro tunc* to the date of disbarment in the originating jurisdiction. *In re Glasco,* 726 A.2d 680, 681–82 (D.C.1999) (per curiam); *see also In re Goldberg,* 460 A.2d 982, 985 (D.C.1983); *cf. In re Soininen,* 853 A.2d 712, 726–28 (D.C.

2004). At the very least, it is not obvious that disbarment in the District would be consecutive, and we do not agree with the COA's argument that the five-year period prescribed in *McBride* must necessarily begin on the date of Ramos' application for admission.

6. The applicant had, however, previously been suspended from practice in Ohio.

1992), *cert. denied,* 507 U.S. 924, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993).

## III.

### CONCLUSION

For the foregoing reasons, the case is remanded to the COA with directions to conduct a hearing in conformity with D.C.App. R. 46(f)(1).

*So ordered.*