**James E. SULLIVAN, Appellant,**

v.

**DISTRICT OF COLUMBIA,
et al., Appellees.**

**No. 00–CV–664.**

District of Columbia Court of Appeals.

Submitted Sept. 27, 2001.

Decided July 24, 2003.

James E. Sullivan, pro se.

Robert R. Rigsby, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel at the time the brief was filed, and Mary T. Connelly, Assistant Corporation Counsel, were on the brief, for appellees.

Before WAGNER, Chief Judge, GLICKMAN, Associate Judge, and NEBEKER, Senior Judge.

WAGNER, Chief Judge:

The question presented in this appeal, one of first impression in this jurisdiction, is whether a guardian *ad litem* appointed by the court for a party in a civil action may be compensated from the Guardianship Fund established pursuant to D.C.Code § 21–2060 (2003). We hold that in order to receive compensation from the Guardianship Fund, a guardian *ad litem* must render services pursuant to the Guardianship, Protective Proceedings and Durable Power of Attorney Act of 1986 (Guardianship Act) (as amended), D.C.Code §§ 21–2001, –2085 (2003), in a guardianship or protective proceeding or in connection with a guardianship or protective arrangement. Appellant, James E. Sullivan, does not meet these statutory requirements; therefore, we affirm the trial court's decision denying him compensation from the Guardianship Fund.

I.

Pursuant to Super. Ct. Civ. R. 17(c),[1] the trial court appointed appellant, James E. Sullivan, to serve as guardian *ad litem* for Brenda Carey Plummer in two cases pending in Superior Court. In the first action, Civil Action No. 1898–98, Ms. Plummer, along with Charles Brewster Squires, Jr., filed a complaint against the District of Columbia, the District of Columbia General Hospital, certain doctors, security firms and security personnel alleging claims of medical malpractice and assault and battery, among others. In the second case, Civil Action No. 3541–98, Ms. Plummer was a named defendant. The District filed a motion to dismiss or alternatively for summary judgment in the first case. Based upon the allegations in the complaint and the representations of Mr. Squires that Ms. Plummer might be incapacitated, the trial court determined that a guardian *ad litem* should be appointed for her and appointed appellant to act in that capacity. Less than two weeks later, the court also appointed appellant as the

---

1. Rule 17(c) provides, in part:
   The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

guardian *ad litem* in the second case, Civil Action No. 3541–98.

In the order appointing appellant as the guardian *ad litem*, the trial court ordered the guardian *ad litem* to determine whether Ms. Plummer was competent to proceed with the action and to file a written report of his findings. The court also ordered the guardian *ad litem* to appear for a status hearing to report his findings on this issue. Appellant prepared a written report and appeared for the scheduled hearing as ordered. The guardian *ad litem* reported that Ms. Plummer had been diagnosed with "Major Depression with psychotic features," including auditory hallucinations, and that she had been hospitalized numerous times for psychiatric treatment. He reported that her records for the past two years demonstrated her profound inability to follow-up with her treatment. Drug abuse complicated her condition. She missed medical appointments, and she was unable to participate meaningfully in consultations with her psychiatrist and case manager and failed to secure her medication. The guardian *ad litem* reported that Ms. Plummer's level of emotional and behavioral functioning was very unstable.

After the hearing, the trial court found that Ms. Plummer was not competent to proceed with her lawsuit, and the court ordered appellant to continue as the guardian *ad litem*. Appellant continued as the guardian *ad litem*, and he prepared an opposition to a motion to dismiss Ms. Plummer's complaint and filed a motion for leave to file an amended complaint on her behalf. The trial court denied the District's motion to dismiss the assault and battery claim, but dismissed the claims for breach of contract and failure to provide a safe environment. The court also denied the District's motion to dismiss for failure to provide statutory notice, under D.C.Code § 12–309 (1999) and proper service. Appellant filed a motion to withdraw as the guardian *ad litem* because he was concerned about his investment of resources in the case and whether he would be compensated for his efforts. The first action, Civil Action No. 1898–98, was settled and dismissed as to the District, D.C. General Hospital and the individual defendants, and the second case, Civil Action No. 3541–98, was dismissed.[2] The trial court granted the guardian *ad litem's* motion to dismiss.

Subsequently, appellant filed a petition for compensation as guardian *ad litem*. He requested compensation in the amount of $2,962.50 plus costs of $20.18 from the Guardianship Fund pursuant to D.C.Code § 21–2060(a). After a hearing on the matter, the trial court initially granted the petition for compensation; however, the payment was refused by the fiscal office. The trial court notified appellant that it was reconsidering whether it had the authority to order compensation from the Guardianship Fund pursuant to D.C.Code § 21–2060. Thereafter, the trial court held that it lacked authority to order compensation for appellant from the Guardianship Fund because he did not provide services in any of the proceedings specified in the statute as a prerequisite for compensation. Further, the court concluded that he was not eligible for compensation from the Guardianship Fund for the services which he performed. In reaching its conclusion, the trial court reviewed the relevant statutory provisions of the Guardianship Act. Finally, the court stated:

**2.** According to the record, appellant recovered $4,000 from the District of Columbia in settlement of the first case on behalf of Ms.

Plummer. In addition, Ms. Plummer recovered $9,000 from another defendant, Hawk One Security.

A guardian ad litem appointed pursuant to Civil Rule 17(c) may be compensated, but ordinarily that compensation comes from the estate of the ward, either one already accumulated or one created by a recovery in the case. *See, e.g., Mitchell v. Ensor,* 412 F.2d 155 (App.D.C.1969); *Bradley v. Pace,* 183 F.2d 806 (App.D.C. 1950); 6A CHARLES ALAN WRIGHT, ARHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1570.

## II.

Appellant argues that the trial court erred in denying him compensation from the Guardianship Fund. Specifically, he contends that he rendered services as the guardian *ad litem* in a protective arrangement within the meaning of the Guardianship Act. He contends on appeal, as he did in the trial court, that his services were rendered in connection with a "protective arrangement" within the meaning of D.C.Code § 21–2056 (2003), which includes "payment, delivery, deposit or retention of funds or property" on behalf of an incapacitated person. The District argues in response that since the services were rendered in a civil action for monetary damages, appellant is not entitled to compensation from the Guardianship Fund. It contends that compensation for the services of a guardian *ad litem* are authorized under the Guardianship Act only for services rendered in specified proceedings or arrangements, *i.e.,* guardianship proceedings, protective proceedings and protective arrangements. It contends that appellant's services were not rendered in any of these matters. Disposition of these arguments depends upon an interpretation of the statute under which such compensation is authorized. Therefore, we outline first the rules of statutory construction before turning to consideration of the applicable statutory provisions in this case.

■ " 'The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." ' *Peoples Drug Stores v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (quoting *Varela v. Hi–Lo Powered Stirrups, Inc.,* 424 A.2d 61, 64 (D.C.1980) (en banc) (in turn quoting *United States v. Goldenberg,* 168 U.S. 95, 102–03, 18 S.Ct. 3, 42 L.Ed. 394 (1897)). Therefore, in determining the meaning of a statute, we must examine first its language to determine if it is " 'plain and admits of no more than one meaning." ' *Id.* (quoting *Davis v. United States,* 397 A.2d 951, 956 (D.C.1979)). In examining the statute, we give the words used the meaning ordinarily attributed to them. *Davis,* 397 A.2d at 956; *United States v. Thompson,* 347 A.2d 581, 583 (D.C.1975). "[T]his court will look beyond the ordinary meaning of the words of a statute only where there are 'persuasive reasons' for doing so." *Carter v. State Farm Mut. Auto. Ins. Co., et al.,* 808 A.2d 466, 471 (D.C.2002) (quoting *Peoples Drug Stores,* 470 A.2d at 755 (in turn quoting *Tuten v. United States,* 440 A.2d 1008, 1013 (D.C. 1982) (other internal quotation marks omitted)). Such circumstances would include: (1) when the legislative history or alternative constructions reveal ambiguities; (2) the literal meaning would produce absurd results; and (3) when necessary to effectuate the statutory purpose as gleaned from the statute as a whole or its legislative history. *Id.* (quoting *Peoples Drug Stores,* 470 A.2d at 754). Applying these familiar rules, we examine the statutory provisions at issue. Our review of the trial court's interpretation of the statute is *de novo. Carter, supra,* 808 A.2d at 470 (citations omitted).

■ The Guardianship Act, under which the Guardianship Fund was established, is

concerned specifically with preserving the assets of individuals who, because of some incapacity, are not able to do so personally. *See* D.C.Code § 21–2001; *see also In re Orshansky,* 804 A.2d 1077, 1090–91 (D.C. 2002). The purpose and policies of the Act, as set forth in the statute, are to:

(1) Simplify and clarify the law concerning the affairs of missing individuals, protected individuals, and incapacitated individuals;

(2) Promote a speedy and efficient system for managing and protecting the estates of protected individuals so that assets may be preserved for application to the needs of protected individuals and their dependents; and

(3) Provide a system of general and limited guardianships for incapacitated individuals and coordinate guardianships and protective proceedings concerned with management and protection of estates of incapacitated individuals.

D.C.Code § 21–2001(a). Under the Act, the court has the authority to appoint, among others, a guardian *ad litem,* who can be compensated from the ward's funds, if sufficient, or from the Guardianship Fund, if the ward's funds would be depleted by payment of such expenses. D.C.Code § 21–2060(a). The Guardianship Fund is established pursuant to D.C.Code § 21–2060, which provides:[3]

(a) As approved by order of the court, any visitor, attorney, examiner, conservator, special conservator, guardian ad litem, or guardian is entitled to compensation for services rendered either in a guardianship proceeding, protective proceeding, or in connection with a guardianship or protective arrangement .... Compensation shall be paid from the estate of the ward or person or, if the estate of the ward or person will be depleted by payouts made under this subsection, from a fund established by the District.

(b) There is established within the General Fund of the District of Columbia a separate account to be known as the "Guardianship Fund" ("Fund") and to be administered by the court. There is authorized to be appropriated funds necessary for the administration of this section.

Thus, under § 21–2060(a), a guardian *ad litem* may be awarded compensation for services rendered in connection with a guardianship or protective proceeding or a guardianship or protective arrangement. For purposes of the Guardianship Act, a guardian *ad litem* is defined as

an individual appointed by the court to assist the subject of an intervention proceeding to determine his or her interests in regard to the guardianship or protective proceeding or to make that determination if the subject of the intervention proceeding is unconscious or otherwise wholly incapable of determining his or

---

**3.** The Act defines other terms which aid in an understanding of its provisions. Among these are:

(8) "Guardian" means a person who has qualified as a guardian of an incapacitated individual pursuant to court appointment and includes a limited guardian as described in section 21–2044(c), but excludes one who is merely a guardian ad litem.

\* \* \* \* \* \*

(21) "Property" means anything that may be the subject of ownership, and includes both real and personal property and any interest in real or personal property.

(22) "Protected individual" means an individual for whom a conservator has been appointed or other protective order has been made as provided in sections 21–2055 and 21–2056.

D.C.Code § 21–2011 (2003).

her interest in the proceeding even with assistance. D.C.Code § 21–2011(9). Thus, from the plain language of the Act, to receive compensation from the Guardianship Fund, a guardian *ad litem* must have been appointed pursuant to the Act to render the services specified in the statute in an intervention proceeding. An "intervention proceeding" is defined as "a proceeding under this chapter," *i.e.*, under the Guardianship Act. D.C.Code § 21–2011(12).

Neither appellant's appointment nor the services that he rendered fall within the ambit of this section. He was not appointed to assist Ms. Plummer to determine her interests in an intervention proceeding. He was appointed to ascertain information concerning her mental condition, and he performed that service in addition to providing her with legal services in two lawsuits. The plain language of the statute does not authorize the appointment of a guardian *ad litem* for these purposes. Indeed, it precludes a guardian *ad litem* from acting as counsel in an intervention proceeding. The alleged incapacitated individual is entitled to the appointment of counsel in guardianship and protective proceedings, unless he or she has chosen counsel. D.C.Code § 21–2054(a) (2003). Counsel's duty differs from that of the guardian *ad litem*. It is the duty of counsel to "represent zealously [the alleged incapacitated person's] legitimate interests." D.C.Code § 21–2033(b) (2003).

While the court may appoint a guardian *ad litem* to assist the subject of an intervention proceeding to determine his or her interests in regards to the proceedings, the guardian *ad litem* appointed under the Act is specifically precluded from serving "as an independent finder of fact, investigator, ombudsman, or other neutral party in the proceeding." D.C.Code § 21–2033(a). In some respects, appellant acted in that ca-

pacity pursuant to his appointment under Super. Ct. Civ. R. 17(c). Under the Guardianship Act, it is a qualified examiner who is responsible for determining whether the alleged incapacitated person's ability to receive and process information is impaired to the degree that he or she can not conduct certain functions. *See* D.C.Code §§ 21–2011, –2041, –2054; *see also* Super. Ct. Prob. R. 326, 327. An examiner is one "qualified by training or experience in the diagnosis, care, or treatment of the causes and conditions giving rise to the alleged incapacity." D.C.Code § 21–2011(7). Appellant was not appointed based on these qualifications.

It is clear that under the Guardianship Act, a separation of the roles of guardian *ad litem*, examiner and counsel was intended. They perform different functions established to protect the rights of the individual who is the subject of an intervention proceeding before intruding into their rights to handle their own affairs. Considering this statutory scheme, it is not possible to conclude that the judge in the civil division was acting pursuant to the Guardianship Act in appointing appellant to serve as guardian *ad litem* in the two civil cases. Moreover, appellant was not acting consistent with the role of a guardian *ad litem* as specified by the Act. To some extent, he acted as a factfinder as related to Ms. Plummer's condition. In other respects he acted as counsel.

The plain language of the Act also limits appointment and compensation of a guardian *ad litem* to specific types of proceedings. *See* D.C.Code §§ 21–2033, –2060. The types of proceedings involved are guardianship or protective proceedings or guardianship or protective arrangements. D.C.Code §§ 21–2011(9), –2033. A protective proceeding is defined as "a proceeding under the provisions of subchapter VI of this chapter." D.C.Code § 21–2011(23).

Subchapter VI provides for the appointment of a conservator or the entry of a protective order in relation to the estate and affairs of a person who is determined by the court to be incapacitated or has disappeared. Such an order may be entered only if the court determines that: "(1) [t]he individual has property that will be wasted or dissipated unless property management is provided; or (2)[m]oney is needed for the support, care, and welfare of the individual or those entitled to the individual's support and protection is necessary or desirable to obtain and provide money." D.C.Code § 21–2051(b)(1), (2) (2003). Subchapter VI also authorizes limited protective arrangements and single transactions. *See* D.C.Code § 21–2056. Under this section of the Code, in a proper proceeding, the court may authorize specific transactions without the appointment of a conservator, including, among others, the retention of funds or property and the ratification of transactions relating to the protected individual's property and business affairs that are determined to be in the best interest of that person. D.C.Code § 21–2056(a), (b).

Appellant argues that his services facilitated the settlement of Ms. Plummer's claim and avoided loss of her funds through negotiations to dismiss a claim against her. He contends that these services may be considered a protective arrangement for the retention of funds within the meaning of D.C.Code § 21–2056, liberally construed, to achieve the statute's purposes and policies of protecting the financial interests of an incapacitated person. By its terms, the Act "shall be liberally construed and applied to promote its underlying purposes and policies." D.C.Code § 21–2001(a). These purposes include "an efficient system for managing and protecting the estates of protected individuals so that assets may be preserved for application to the needs of protected individuals and their dependents ...." D.C.Code § 21–2001(b)(2). However, appellant was not involved in preserving her assets for their application to her needs. While successful efforts by counsel on behalf of a client in litigation may serve to protect and further the client's financial interests, that is not sufficient to create a protective arrangement within the meaning of the Act.

Moreover, the Act requires first that the need for even limited single transaction protective arrangements be established in a "proper proceeding" as described in D.C.Code § 21–2051. D.C.Code § 21–2056. A proper proceeding includes many safeguards for the protection of the alleged incapacitated person, including, among others, notice to the individual and the person's nearest relatives, and a hearing. *See* D.C.Code §§ 21–2042, –2051 to –2053 (2003). That did not occur in this case. The court must also make a number of findings related to the subject's financial affairs, as well as consider the interests of creditors and dependents of the protected individual before approving a protected arrangement. *See* D.C.Code §§ 21–2051(b), –2056. The trial court, in appointing appellant to act as guardian *ad litem*, did not purport to be acting pursuant to these provisions, and therefore, did not conform its order to these statutory provisions. Under the circumstances, it can not be said that appellant was appointed to carry out a protective arrangement under the terms of the Act.

Appellant argues that he provided compelling evidence to the court that Ms. Plummer was an incapacitated individual as defined in D.C.Code § 21–2011(11).[4]

---

4. An "incapacitated individual" means "an adult whose ability to receive and evaluate

While Ms. Plummer's condition may have warranted such a finding, she was not made the subject of an intervention proceeding under the Guardianship Act. She was not given the opportunity to be heard on the issue in a protective proceeding where she would have had the benefit of all of the protections of the Guardianship Act, including notice to relatives, the appointment of counsel, a separate guardian *ad litem* and an examiner, if necessary. We do not know what the outcome would have been had these statutory safeguards been afforded. Therefore, we can not conclude that the evidence showed that Ms. Plummer would have been shown to be an incapacitated individual within the meaning of the Guardianship Act.

Appellant argues that although he was not appointed guardian *ad litem* for one of the specific proceedings and reasons set forth under the Guardianship Act, he should be compensated nevertheless from the Guardianship Fund. His argument focuses on two principal reasons, namely that: (1) the Act provides that it should be construed liberally and applied to accomplish its purposes; and (2) the proceeding need not have been in the Probate Division of the Court, because there are no jurisdictional limitations prohibiting one division of the Superior Court from considering matters appropriately considered by another. Even a liberal construction of the Act will not permit us to overlook its specific requirements that the Guardianship Fund be available only for compensation to those who have served in a recognized capacity pursuant to appointments in a "guardianship proceeding, protective proceeding, or in connection with a guardianship or protective arrangement." D.C.Code § 21–2060. Rather than furthering the purposes of the Act, the appointment of a guardian *ad litem* to handle a protective arrangement outside the process established by the Act, tends to circumvent, rather than achieve, its salutary purposes. The services rendered by appellant were not undertaken in such proceedings. This court has no authority to order the use of government funds in a manner for which they are not authorized. *See* 31 U.S.C. § 1341 (2003). Although services of the type rendered by appellant are valuable to the litigant and the court in civil cases, government funds have not been made available for that purpose, and therefore, the courts and the parties must continue to rely upon *pro bono* services for individuals who are unable to afford them in such cases.[5]

Appellant fares no better on his second argument. He is correct that we have held that the functional divisions of the court (*e.g.,* probate, civil, family) "do not delimit their power as tribunals of the Superior Court with general jurisdiction to adjudicate civil claims and disputes." *Andrade v. Jackson,* 401 A.2d 990, 992–93 (D.C.1979). Therefore, every division is deemed to have the undivided authority of the Superior Court. *Id.* Nevertheless, we also recognize that the interests of orderly administration is served by having the division assigned to specific categories of

information effectively or to communicate decisions is impaired to such an extent that he or she lacks the capacity to manage all or some of his or her financial resources or to meet all or some essential requirements for his or her physical health, safety, habilitation, or therapeutic needs without court-ordered assistance or the appointment of a guardian or conservator." D.C.Code § 21–2011(11).

**5.** In civil cases where a party appears to be incapacitated, it may be necessary to pursue the appointment of someone to act on his or her behalf through a proceeding under the Act.

cases resolve those cases. *See id.* The rules of Superior Court provide that "[a]ll intervention proceedings shall be filed in the Probate Division of the Superior Court of the District of Columbia." Super. Ct. Prob. R. 301. Moreover, even if another division were to act in guardianship or protective proceedings, that division would be bound by the laws and rules pertaining to such actions. In this case, it is clear that the trial court did not purport to act in such a proceeding or to appoint appellant as guardian *ad litem,* consistent with the provisions of the Guardianship Act. Since appellant did not perform services authorized to be paid from the Guardianship Fund, he cannot look to the Fund for compensation.

For the foregoing reasons, the decision of the trial court hereby is

*Affirmed.*