*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-PR-1235

IN RE HATTIE WEAKS;
DORENE HANEY, APPELLANT.

On Appeal from the Superior Court
of the District of Columbia
(IDD172-18)

(Hon. Judith N. Macaluso, Motion Judge)

(Submitted December 11, 2019                    Decided February 6, 2020)

*Dorene Haney*, pro se.

*Joanne Schamest* filed a statement in lieu of brief on behalf of Hattie Weaks.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and THOMPSON, and MCLEESE, *Associate Judges*.

THOMPSON, *Associate Judge*:    Appellant Dorene Haney appeals the denial of the Petition for Allowance of Compensation she submitted to the Probate Division of the Superior Court, in which she sought compensation from the Guardianship Fund[1] for services she rendered in connection with filing a guardianship petition on behalf of Harriet "Hattie" Weaks, litigating said petition, and assisting Ms. Weaks's appointed guardian after the guardianship petition was

---

[1] *See* D.C. Code § 21-2060(a), (b) (2012 Repl. & 2019 Supp.).

granted. We reverse the judgment on appeal and remand this matter to the Superior Court with instructions to consider anew appellant's Petition for Allowance of Compensation.

## I.

In 2015, the District of Columbia Housing Authority ("DCHA") brought a landlord-tenant action seeking to evict Ms. Weaks on the ground that the conditions of her senior public housing apartment were "unsafe and unsanitary" due to the effects of hoarding. Ms. Weaks was represented in this action in the Landlord-Tenant Branch by the Legal Aid Society of the District of Columbia. Ultimately, DCHA offered Ms. Weaks a settlement under which DCHA would provide her with a new apartment if she would agree to have a live-in aide perform cleaning services. It became clear to Ms. Weaks's counsel, however, that Ms. Weaks was not able to consent to such an agreement on her own; her attorney subsequently sought the appointment of a guardian ad litem.

On March 12, 2018, the court in the landlord-tenant action appointed appellant, an attorney, to serve as guardian ad litem for Ms. Weaks. Upon meeting Ms. Weaks, appellant came to the conclusion that Ms. Weaks "was not able to

articulate her wishes with respect to the settlement agreement." Appellant also recognized that, as guardian ad litem, she did not have authority to substitute her judgment for Ms. Weaks's judgment and that, "to obtain such authority, it was necessary to petition for the appointment of a guardian." Therefore, appellant petitioned the Probate Division for the appointment of a limited guardian who would have such authority. The Probate Division found Ms. Weaks to be incapacitated and appointed John Gerlach, Esq., as her limited guardian. Ultimately, Mr. Gerlach successfully entered into an agreement to resolve Ms. Weaks's landlord-tenant case, thus allowing her to retain housing.

Appellant subsequently filed in the Probate Division her Petition for Allowance of Compensation (the "Petition"), seeking payment of $819 for time she spent working on the petition for the appointment of a guardian for Ms. Weaks and $85.38 for costs advanced. Appellant advised the Probate Division that she usually billed at an hourly rate of $300, but was expensing her time at the rate of $90 per hour because she sought compensation from the Guardianship Fund. Appellant's Petition also itemized the services she rendered as guardian ad litem in the landlord-tenant matter, but sought no compensation for that work.[2] Appellant

---

[2] Appellant asserts in her brief on appeal that she "is one of perhaps two attorneys who agree to accept . . . [court] appointments" to render guardian ad

(continued…)

stated in her Petition that Ms. Weaks was an octogenarian incapacitated woman who lived in public housing and whose sole source of income appeared to be supplemental security income (SSI) payments, and that to the best of appellant's knowledge, Ms. Weaks had no assets from which any amount could be paid to appellant.[3]

On October 18, 2018, the trial court issued an order denying appellant's Petition. Citing *Sullivan v. District of Columbia*, 829 A.2d 221 (D.C. 2003), the court reasoned that "reimbursement may be obtained from the Guardianship Fund only if the person seeking reimbursement has been appointed pursuant to the Guardianship Act."[4] The court reasoned that when appellant filed the guardianship petition, participated in the hearing and enabled the appointed guardian to protect Ms. Weaks's housing, she "did so pursuant to her appointment as Guardian *ad*

---

(…continued)
litem services in landlord-tenant proceedings, knowing that no compensation will be available for those services from the Landlord-Tenant Branch or the Superior Court Civil Division.

[3] *See* D.C. Code § 21-2060(a) (providing for compensation to be paid "from a fund established by the District[]" where "the estate of the ward or person will be depleted by payouts made under this subsection[.])"

[4] Appellant acknowledges that she was not appointed pursuant to the Guardianship Act.

*Litem* in [the landlord-tenant action]." The court also stated that appellant had not been appointed in a "proper proceeding" as described in D.C. Code § 21-2051 but instead was appointed ad hoc by the landlord-tenant court in a proceeding that was without the "many [procedural] safeguards" (such as notice to the individual and her nearest relatives, and a hearing) that precede the appointment of a guardian ad litem in a Probate Division proceeding. The court suggested that "[p]erhaps counsel may obtain reimbursement in future cases by asking for appointment as Guardian *ad Litem* in the Probate matter upon first appearance in the Probate case."

This appeal followed.[5]

---

[5] On November 14, 2018, appellant timely filed her notice of appeal. On March 18, 2019, appellant filed her brief, along with a Motion to Supplement Record representing that "[n]one of the parties to the proceeding below objected to the petition for compensation[]" and that appellant did "not expect that any party w[ould] file a brief on behalf of an appellee, as there appear to be no appellees." Ms. Weaks has, through her attorney, filed a Statement in Lieu of Brief for Appellee, stating that she did not oppose appellant's request for compensation in the trial court, and takes no position in the matter on appeal. While Elizabeth Bennett and Betty Ann Snow (who the record discloses are Ms. Weaks's sisters) are designated as appellees in this matter, they were given the opportunity to file a brief (and indeed were ordered to do so by this court) but have not done so. We therefore proceed solely on the basis of appellant's brief. *See Kidd Int'l Home Care, Inc. v. Prince*, 917 A.2d 1083, 1087 (D.C. 2007) ("[W]hile the rules of this court require briefs to be filed by the parties, if a party fails to file a brief, the court may nonetheless choose to move ahead with the case.") (emphasis omitted).

**II.**

Generally, we review the grant or denial of attorney's fees for abuse of discretion. *Snead v. Watkins* (*In re Estate of McDaniel*), 953 A.2d 1021, 1023 (D.C. 2008). However, we review *de novo* the Superior Court's statutory authority to award particular fees and costs. *In re Smith*, 138 A.3d 1181, 1184 (D.C. 2016) (*Smith II*).

In 1986, the Council of the District of Columbia enacted the District of Columbia Guardianship, Protective Proceedings, and Durable Power of Attorney Act, D.C. Law 6-204, D.C. Code §§ 21-2001 to -2085 (2012 Repl. & 2019 Supp.) (the "Act") which established "a comprehensive system of guardianship and conservatorship proceedings to deal with a wide range of legal problems which arise from varying degrees of adult physical and mental incapacity." *Smith II*, 138 A.3d at 1182–83 (quoting Report of the Council, Committee on the Judiciary, on Bill 6-7, at 2 (June 18, 1986) (the "Report")).[6] Under the Act, the Superior Court

---

[6] The 1986 Act was "modeled after the Uniform Guardianship and Protective Proceedings Act . . . which was promulgated by the National Conference of Commissioners on Uniform State Laws in 1982." *In re Estate of*

(continued…)

may appear a conservator or guardian for any adult who qualifies as an "[i]ncapacitated individual" in that she lacks the capacity to manage her "financial resources or . . . physical health, safety, habilitation, or therapeutic needs without court-ordered assistance or the appointment of a guardian or conservator." D.C. Code § 21-2011(11) (2019 Supp). D.C. Code § 21-2060(a) states in pertinent part that "[a]s approved by order of the court, any . . . attorney . . . is entitled to compensation for services rendered either in a guardianship proceeding, protective proceeding, or in connection with a guardianship or protective arrangement." Superior Court Probate Division Rule 308(a) also provides that with court approval "[a]ny . . . attorney . . . is entitled to reasonable compensation [including, where applicable, from the Guardianship Fund] for services rendered in an intervention proceeding."

## III.

For the several reasons that follow, we conclude that the Probate Division was not constrained in the manner the court thought it was when it ruled on appellant's Petition.

---

(…continued)
*Grealis*, 902 A.2d 821, 825 (D.C. 2006) (citing the Report at 2) (internal quotation marks omitted).

As described above, the trial court in the Probate Division read this court's opinion in *Sullivan* as mandating that "reimbursement may be obtained from the Guardianship Fund only if the person seeking reimbursement has been appointed pursuant to the Guardianship Act." In *Sullivan*, we affirmed a determination that the Superior Court lacked the authority to order compensation from the Guardianship Fund for an attorney who had been appointed by the Superior Court to act as a guardian ad litem in two civil matters. The attorney had filed a "petition for compensation as guardian *ad litem*[]" asking for reimbursement for performing his appointed task of "ascertain[ing] information concerning [an allegedly incapacitated individual's] mental condition[]" and for providing legal services to the individual (preparation of an opposition to a motion to dismiss and a motion for leave to file an amended complaint in a matter in which the individual was a plaintiff and a motion to dismiss in a second matter in which she was a defendant) in two separate lawsuits. *See Sullivan*, 829 A.2d at 222–23, 226.

In holding that the attorney could not be compensated under the Act, we noted that the alleged incapacitated individual had not been "made the subject of an intervention proceeding under the Guardianship Act[,]" *id.* at 228, and explained that the attorney "was not acting consistent with the role of a guardian ad

litem as specified by the Act[,]" which defines a "guardian *ad litem*" as "an individual appointed by the court to assist the subject of an intervention proceeding to determine his or her interests in regard to the guardianship or protective proceeding or to make that determination if the subject of the intervention proceeding is unconscious or otherwise wholly incapable of determining his or her interest in the proceeding even with assistance[,]"[7] *id.* at 225–26 (citing D.C. Code § 21-2011(9)); *see also* Report at 14 (noting that the Act "limit[s] the role of the guardian ad litem"). We also explained that the Act provides for compensation for guardians ad litem "for services rendered in connection with a guardianship or protective proceeding," *Sullivan*, 829 A.2d at 225, and that the services Mr. Sullivan rendered did not "fall within the ambit" of the Act, *id.* at 226.

We agree with appellant that the compensation she seeks is not foreclosed by *Sullivan*. Appellant explicitly does not seek compensation for services rendered as a guardian ad litem as defined in the Act (and does not dispute that her services do not comport with the services described in D.C. Code § 21-2011(9)). Nor does she seek compensation for all the services she performed as a guardian ad litem

---

[7] Here, the Probate Division's suggestion that "[p]erhaps counsel may obtain reimbursement in future cases by asking for appointment as Guardian *ad Litem* in the Probate matter upon first appearance in the Probate case[]" overlooks the fact that an attorney bringing a guardianship petition serves a function different from a guardian ad litem appointed pursuant to the Act.

appointed in the landlord-tenant matter. Rather, she seeks compensation for "services rendered as a petitioner in the intervention proceeding[]" that led to appointment of a guardian for Ms. Weaks, work that squarely falls within the ambit of the Act. In the language of D.C. Code § 21-2060(a), appellant is "an[] . . . attorney [who has] . . . rendered [services] . . . in a guardianship proceeding,"[8] who therefore is eligible to be compensated from the Guardianship Fund if the ward has insufficient assets. If there were any doubt about whether appellant's role in *initiating* the intervention proceeding qualifies as services "*in* a guardianship proceeding," *id.* (emphasis added), we resolved that doubt when we explained in *Grealis* that the substance of § 21-2060 is in accord with § 2-313 of the Uniform Guardianship and Protective Proceedings Act ("Uniform Act") which made clear that "any attorney whose services resulted in a protective order . . . is entitled to reasonable compensation" (in Ms. Weaks's case, from the Guardianship Fund). *Grealis*, 902 A.2d at 825.[9]

---

[8] We interpret this language in accordance with "[t]he primary rule of statutory construction[,]" which is that "the intent of the legislature is to be found in the language which it has used." *James Parreco & Son v. District of Columbia Rental Hous. Comm'n*, 567 A.2d 43, 46 (D.C. 1989). "[I]f [the language] is clear and unambiguous" and the plain meaning does not lead to absurd results, we "will look no further." *District of Columbia v. Am. Univ.*, 2 A.3d 175, 186 (D.C. 2010).

[9] We explained that "the original draft of § 21-2060 . . . closely tracked" section 2-313 of the Uniform Act. *Grealis*, 902 A.2d at 825 & 825 n.6. The original draft stated that:

(continued…)

In *Sullivan*, we said that it was "not possible to conclude that the judge in the civil division was acting pursuant to the Guardianship Act in appointing [Mr. Sullivan] to serve as guardian *ad litem* in the two civil cases." 829 A.2d at 226. This should not be understood to mean that an appointment explicitly and expressly based on the Act is a *sine qua non* of compensation from the Guardianship Fund; rather, our statement in *Sullivan* was a recognition that the Civil Division did not appoint Mr. Sullivan to perform services of a type an attorney may be appointed to perform under the Guardianship Act. Nor did the statement in *Sullivan* mean that an appointment under the Act must precede the services the attorney performs. We recognized in *In re Orshansky*, 952 A.2d 199 (D.C. 2008), that an attorney may be "due compensation [under the Act] for his

(…continued)

> If not otherwise compensated for services rendered, any visitor, attorney, examiner, conservator, or special conservator appointed in a protective proceeding and any attorney whose services resulted in a protective order or in an order that was beneficial to a protected individual's estate is entitled to reasonable compensation, as the court determines, from either the estate or a fund established by the District of Columbia if the estate will be depleted by payouts made under this section.

Bill 6-7 at 36.

work . . . from his appointment *nunc pro tunc*." *Id.* at 203 n.3, 206. Similarly, in *In re Smith*, 99 A.3d 714 (D.C. 2014) (*Smith I*), we said that appellant Mr. Gardner's 2010 appointment as conservator pursuant to a since-repealed statute was "properly construed to have been made pursuant to the Guardianship Act." *Id.* at 721–22; *see also Smith II*, 138 A.3d at 1186 (citing *Smith I* for the proposition that "an individual who was appointed by the court without explicit reference to the Guardianship Act, but who in good faith performed the duties of a guardian, is eligible to receive compensation from the Guardianship Fund"). It is also worth noting by way of analogy that, in enacting the Act, the Council explicitly intended to permit the court to "*ratify* any transaction necessary or desirable to achieve any . . . care arrangement" meeting the "needs of the protected individual." Report at 3 (emphasis added); D.C. Code § 21-2056 (2012 Repl.).

We also conclude that the fact that appellant acknowledges that her work was "a necessary part of [her] performance of her duties as guardian ad litem[]" in the landlord-tenant matter[10] is not a bar to compensation from the Guardianship Fund where, as it appears here, appellant has not been compensated from any other source for her work. As we have previously observed, the Act is to be "liberally

---

[10] The docket sheet in the landlord-tenant case contains a similar acknowledgment, i.e., a notation that "defendant [Weaks] needs to seek an actual guardianship."

construed and applied to promote its underlying purposes and policies[,]" D.C. Code § 21-2001(a), which include to provide "a speedy and efficient system for managing and protecting the estates of protected individuals so that assets may be preserved for application to the needs of protected individuals and their dependents[.]" D.C. Code § 21-2001(b)(2). This purpose has led us to take an expansive view of the kind of duties that are compensable under the Act. *See*, *e.g.*, *Smith II*, 138 A.3d at 1184, 1188 (authorizing payment under the Guardianship Act for appellate work by an attorney to recover compensation for the services he performed as a court-appointed guardian). We do so here as well, noting that the Guardianship Act states that "[u]nless displaced by the particular provisions of this chapter, the principles of law and equity supplement its provisions." D.C. Code § 21-2002(a) (2012 Repl.); *see also Smith II*, 138 A.3d at 1187 n.11 (concluding that "'on general principles of law and equity,' [Smith] [wa]s entitled to have the Superior Court consider his claim for compensation for 'the reasonable value of the work he performed' in protecting his right to compensation") (citing *Mason v. Rostad*, 476 A.2d 662, 666 (D.C. 1984) (holding, "on general principles of law and equity, [that] the appellee is entitled to recover the funds he expended, the reasonable value of the work he performed and the services he rendered")).

As noted above, the Probate Division was troubled by the fact that appellant was not appointed through a proceeding that included the types of procedural safeguards that precede appointment of a guardian ad litem in a Probate Division proceeding. But, again, appellant does not seek compensation for services as a guardian ad litem as defined in the Act, and we are doubtful that attorneys who initiate guardianship proceedings generally do so pursuant to court appointments. We note that Probate Rule 308(a) contains no requirement that an attorney be appointed by the Probate Division in order to receive compensation. Super. Ct. Prob. R. 308(a). We also note that the record shows that the Probate Division required appellant to attend a status conference in the intervention matter and thus was directed by the court to perform some of the work for which she has billed. And, in any event, because appellant litigated the guardianship petition in a hearing before the Probate Division that was preceded by notice to interested parties, and because she was successful in so doing, the court had a (renewed[11]) opportunity to assess appellant's skills and good faith and the reasonableness of her efforts. The court is thus equipped to assess the reasonableness of the compensation amount appellant seeks.

---

[11] The court noted in its Order that "[appellant] often assists the court by accepting appointment" and that "[i]t is an understatement to say that the court appreciates the services rendered by [appellant]."

For all the foregoing reasons, we hold that the Superior Court may within its discretion approve compensation for appellant from the Guardianship Fund. We remand for the court to reconsider appellant's Petition. It is

*So ordered.*